UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


TECHTRON   CORPORATION;   SAMUEL
FRIEDLAND; JUDITH FRIEDLAND,

                    Plaintiffs,

vs.                                Case No.  2:05-cv-318-FtM-29SPC

JOHN J. PIRET,

                    Defendant.


AIRFLYTE ELECTRONICS COMPANY; JOHN
J. PIRET

                    Counter-Claimants,

vs.

TECHTRON   CORPORATION;   SAMUEL
FRIEDLAND; JUDITH FRIEDLAND

                    Counter-Defendants.
_____


**OPINION AND ORDER**

_____This matter comes before the Court on counter-defendants'
Motion to Dismiss Counterclaim or Alternatively, to Strike Certain
Portions Thereof (Doc. #15) filed on July 25, 2005.  Counter-
claimants filed their Response (Doc. #25) on August 4, 2005.

**I.**

A motion to dismiss a counterclaim under Fed. R. Civ. P.
12(b)(6) is evaluated in the same manner as a motion to dismiss a
complaint.  Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D.

Fla. 2001).  In deciding a motion to dismiss, the Court must accept all factual allegations in the counterclaim as true and take them in the light most favorable to the counter-claimant.  Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  A counterclaim should not be dismissed unless it appears beyond doubt that the counter-claimant can prove no set of facts that would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).  To satisfy the pleading requirements of Fed. R. Civ. P. 8, a counterclaim must simply give fair notice of what the counter-claimant's claim is and the grounds upon which it rests.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  However, dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of the counterclaim, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a counterclaim.  Marsh, 268 F.3d at 1036 n.16.

## II.

The Counterclaim (Doc. #3) sets forth the following facts, which at this stage of the proceedings are assumed to be true. John J. Piret ("Piret") is a resident of the state of New Jersey,

-2-

and is the president and the majority shareholder of Airflyte Electronics Company ("Airflyte"), a New Jersey corporation having its principal place of business in New Jersey.  Airflyte's sole business is the design and manufacture of slip ring assemblies, which are electrical swivels that enable two machine parts to rotate continuously with respect to one another, without the wires that connect the two machine parts becoming tangled.

Piret and Samuel Friedland (Friedland) entered into a 1996 oral agreement and a 1997 written agreement.  The contracts deal with Piret's and Friedland's business relationship and arguably their status as shareholders of Techtron Corporation ("Techtron"), a Florida corporation.  Piret and Friedland believed that utilizing the Techtron Florida facility for manufacturing slip ring assemblies was more efficient than Airflyte's New Jersey facility. For several years, Techtron would produce the finished product and Airflyte would sell them to its customers and pay Techtron a portion of the income from the sales.  Piret alleges that based upon the contracts and conduct, he owns seventy-five percent of Techtron stock and that Friedland owns the remaining twenty-five percent.  Piret authorized the transfer of Airflyte equipment from New Jersey to Florida, and eventually Techtron directly filled customer orders for large quantities of slip ring assemblies.

When the business relationship deteriorated in 2004, Piret offered to sell his share of Techtron stock to Friedland for $1,000,000.00.  Friedland refused the offer, and ultimately

instructed Techtron to cease manufacturing slip ring assemblies for Airflyte's purchase orders.

Friedland and his wife, Judith Friedland, brought a one count declaratory judgment action in state court, which was removed to federal court. The Second Amended Complaint (Doc. #19) is the operative pleading. The Friedlands allege that for various reasons Piret has no ownership interest in Techtron under the 1997 agreement. Piret filed his Answer, Affirmative Defenses, and Counterclaim (Doc. #24). The nine-count Counterclaim alleges the following causes of action: (1) declaratory judgment under FLA. STAT. § 86.021 as to ownership and rights of Techtron against all counter-defendants; (2) breach of contract as to the 1996 and 1997 agreements against Mr. Friedland; (3) promissory estoppel against all counter-defendants; (4) unjust enrichment against all counter-defendants; (5) conversion against Mr. Friedland and Techtron; (6) replevin against Mr. Friedland and Techtron; (7) tortious interference with business relationships against Mr. Friedland; (8) breach of contract as to the purchase orders and commission agreement against Techtron; and (9) equitable accounting against all counter-defendants. Airflyte joins Piret in the Counterclaim.

In response, counter-defendants seek dismissal of the counterclaim for the following reasons: (1) Mrs. Friedland is not a proper party to any of the counts; (2) counter-claimant Airflyte lacks standing due to its failure to comply with the requirements of FLA. STAT. § 607.1502; (3) counts III-IX fail to state a claim;

and (4) certain counts are procedurally and substantively defective.

**III.**

**A.  Joinder of Mrs. Friedland**

Counter-defendants contend that the Counterclaim contains no specific allegations against Mrs. Friedland, she is not a proper party to any of the counts of the Counterclaim, and therefore the Counterclaim should be dismissed as to her.  Counter-claimants respond that Mrs. Friedland is a proper party because of a variety of facts, which they have not alleged in the Counterclaim.  Having failed to allege any material facts in the Counterclaim as to Mrs. Friedland, the Counterclaim will be dismissed as to her with the exception of Count I, which simply seeks the same declaratory relief in reverse as the Second Amended Complaint (to which Mrs. Friedland is a party plaintiff).

**B.  FLA. STAT. § 607.1502 Standing**

Counter-defendants contend that Airflyte lacks standing under FLA. STAT. § 607.1502 to maintain its suit because Airflyte failed to obtain a certificate of authority to transact business in the State of Florida.  Counter-claimants respond that Airflyte is exempt from the requirements of FLA. STAT. § 607.1502; or alternatively, that Airflyte's counterclaim is compulsory and therefore proper even in the absence of a certificate of authority.

Florida Statute § 607.1502 provides in pertinent part that:

> (1) A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

However, FLA. STAT. § 607.1501 creates a "safe harbor" of activities a foreign corporation can engage in without being required to obtain a certificate of authority. Suffolk Federal Credit Union v. Continental Ins. Co., 664 So. 2d 1153, 1154 (Fla. 3rd DCA 1995). FLA. STAT. § 607.1501 states in pertinent part:

> (1) A foreign corporation may not transact business in this state until it obtains a certificate of authority from the Department of State.
>
> (2) The following activities, among others, do not constitute transacting business within the meaning of subsection (1):
>
> . . .
>
> (f) Soliciting or obtaining orders, whether by mail or through employees, agents, or otherwise, if the orders require acceptance outside this state before they become contracts.
>
> . . .
>
> (i) Transacting business in interstate commerce.
>
> . . .
>
> (3) The list of activities in subsection (2) is not exhaustive.

Counter-claimants assert that Airflyte is exempted from obtaining a certificate because Airflyte's activities can be categorized as interstate commerce pursuant to § 607.1501(2)(i) and/or solicitations under § 607.1501(f).

The facts alleged in the Counterclaim clearly show that Airflyte's activities were not limited to transacting business in interstate commerce or soliciting orders requiring acceptance outside of Florida.  Paragraphs 6, 8, 15, 16-23, 26, 32-35, 43 describe Airflyte's rehire of Mr. Friedland as an employee who works out of his Florida home; Airflyte's manufacturing activities at the Florida facility; Airflyte's transfer of employees, job kits and equipment from the New Jersey facility to the Florida facility; Airflyte's payment of many of the Florida facility's bills, payroll and operating expenses; Airflyte's use of the Florida facility to manufacture the slip ring assembly product to fill orders; and Airflyte's designation of the Florida facility to directly handle customer relationships, including soliciting and satisfying the orders for slip ring assemblies, while Airflyte received a portion of the sales proceeds from the transactions.  This conduct is much different from, for example, Davis Tune, Inc. v. Precision Franchising, LLC, 2005 WL 1204618 (N.D. Fla. 2005), where the defendant non-Florida corporation engaged exclusively in interstate commerce activities and neither maintained a Florida office nor had Florida employees.  Thus, the Court finds that Airflyte is not exempt from Florida's "door-closing" statute.

Alternatively, counter-claimants' argue that Airflyte's counterclaim is compulsory, and thus Airflyte is not required to register to do business in Florida as a precondition to its claims. A compulsory counterclaim is one which "arises out of the

transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a).  A claim arises out of the same transaction or occurrence if there is a logical relationship between the claims. Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998). "Transaction" is a word of flexible meaning, and "may comprehend a series of many occurrences." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds*, Manders v. Lee, 338 F.3d 1304, 1328 (11th Cir. 2003).  Thus, the court must determine whether a logical relationship exists between Airflyte's causes of action for unjust enrichment, conversion, replevin, tortious interference with business relationships, breach of contract, and equitable accounting, and the declaratory judgment action in counter-defendants' Second Amended Complaint.

According to the Second Amended Complaint, counter-defendants seek a declaratory judgment that counter-claimants do not have an ownership interest in Techtron by virtue of the November 10, 1997 document purporting to be a contract between Piret and Friedland. However, the counter-claimants allege, based upon this document and Friedland's other conduct: (1) that they do own a portion of Techtron's stock; (2) that they reasonably relied on Friedland's promise to convey seventy-five percent of Techtron stock to the counter-claimants when they transferred Airflyte equipment and employees to and funded the operations of the Florida facility; (3)

that counter-defendants retained Airflyte's equipment despite Airflyte's withdrawal of permission to use the equipment; and (4) that counter-defendants failed to satisfy their obligations under the purchase order and commission agreements.

The Court concludes that Airflyte's claims are logically related to the same transactions and occurrences which give rise to the Second Amended Complaint, and a resolution of the surrounding factual issues could have a binding effect on these claims. Accordingly, the Court finds that Airflyte's claims are compulsory, and must be joined regardless of whether Airflyte was required to register under Florida Statutes.

### C.  Shotgun Pleading

Counter-defendants argue that the Counterclaim includes vague and contradictory allegations, and incorporates factual allegations that are immaterial to certain counts.  Counter-defendants urge this Court to dismiss the Counterclaim as a shotgun pleading.  The Court declines.

The Eleventh Circuit explained that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002); see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Cramer v. State of Fla., 117 F.3d

1258, 1263 (11th Cir. 1997).  Here, the Court finds that the Counterclaim provides short, plain statements of relief, and that the paragraphs incorporated in each count are material to each claim.  Thus, the Court concludes that the Counterclaim is not a shotgun pleading.

### D.  Failure to State a Claim Under Florida Substantive Law

#### 1.  Promissory Estoppel

Counter-defendants contend that Count III should be dismissed because counter-claimants failed to plead that they reasonably, and to their detriment, relied on Friedland's alleged promises.  Under Florida law, the basic elements of promissory estoppel are as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.

Advanced Mktg. Sys. Corp. v. ZK Yacht Sales, 830 So. 2d 924, 927 (Fla. 4th DCA 2002); see also Doe v. Univision Television Group, Inc., 717 So.2d 63, 65 (Fla. 3d DCA 1998) ("The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice.").

The Court finds that Count III has been adequately plead. Counter-claimants alleged that, in transferring Airflyte's assets to Techtron, they reasonably relied on Friedland's promise to

-10-

convey a majority percentage of the ownership interest in Techtron to Piret when Piret authorized Airflyte to loan its equipment to Techtron, and Airflyte did so.  (Doc. #3, pp. 7-11, 23-24).  The Court therefore concludes that the promissory estoppel claim is adequately plead.

### 2.  Unjust Enrichment

Counter-defendants contend that the Counterclaim fails to state a claim for unjust enrichment because counter-claimants did not allege that an adequate remedy at law was not available. Counter-claimants respond that Fed. R. Civ. P. 8(a) allows them to plead in the alternative.

Under Florida law, the elements of a cause of action for unjust enrichment are as follows:

> (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005); see also Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1006-07 (11th Cir. 2004).  The Counterclaim alleges all of these elements.  (Doc. # 3, ¶¶ 78-81). Fed. R. Civ. P. 8(a) allows a party to plead alternative claims. Counter-claimants have properly presented the claim for unjust enrichment, and the Motion to Dismiss as to Count IV is due to be denied.

### 3. Conversion

Counter-defendants contend that counter-claimants failed to state a claim under Count V because (1) they have not identified the specific property that was converted; and (2) that counter-claimants transferred the ownership interest in the equipment to Techtron.  Counter-claimants respond that the transfer of personal property was not "freely given."  Rather, according to the Opposition, "Airflyte relocated the property in question to the Florida facility with the expectation that Airflyte would retain ownership of the property."  (Doc. #25, p. 12).

Under Florida law, a conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time."  Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1291 (11th Cir. 2001) (quoting Senfeld v. Bank of Nova Scotia Trust Co.(Cayman) Ltd., 1160-61 (Fla. DCA 1984)) (footnote omitted); see also National Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc., 759 F.2d 873, 878 (11th Cir. 1985) (applying Florida law).  A defendant is liable for conversion if the defendant "deprived" the plaintiff of its property by means of an "unauthorized act."

In this case, the Court finds that counter-defendants failed to satisfy their burden of showing that counter-claimants can prove no set of facts supporting a conversion of the equipment.  Counter-claimants have alleged (1) Airflyte's ownership over the equipment transferred from Airflyte's New Jersey facility to Techtron's Florida facility; (2) counter-defendants knowingly deprived

-12-

counter-claimants the property in question; and (3) counter-defendants continue to use the equipment when consent has been withdrawn.   The Court therefore concludes that Count V has been adequately plead.

### 4. Replevin

Counter-defendants contend that counter-claimants failed to sufficiently allege a statutory replevin claim, and consequently, Count VI should be dismissed.   Specifically, counter-defendants argue that Count VI is deficient because the Counterclaim does not allege any of the pleading requirements set forth by § 78.055, FLA. STAT.   In response, counter-claimants argue that, while the technical requirements of the replevin statute may not be fully satisfied by the Counterclaim, the Court should consider the memorandum of law and supporting declarations in Airflyte's Motion for Replevin in conjunction with the Counterclaim.   In doing so, Count VI could be considered adequately plead.   The Court declines to look at material outside the pleading at the Rule 12(b)(6) stage.

Under the Florida replevin statute, the pleading must recite and show the following statements:

> (1) A description of the claimed property that is sufficient to make possible its identification and a statement, to the best knowledge, information, and belief of the plaintiff of the value of such property and its location.

> (2) A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right. If the

        plaintiff's interest in such property is based on a
written instrument, a copy of said instrument must be
attached to the complaint.

        (3) A statement that the property is wrongfully detained
by the defendant, the means by which the defendant came
into possession thereof, and the cause of such detention
according to the best knowledge, information, and belief
of the plaintiff.

        (4) A statement that the claimed property has not been
taken for a tax, assessment, or fine pursuant to law.

        (5) A statement that the property has not been taken
under an execution or attachment against the property of
the plaintiff or, if so taken, that it is by law exempt
from such taking, setting forth a reference to the
exemption law relied upon.

FLA. STAT. § 78.055.

        Here, the Court finds that, on its face, the Counterclaim is deficient. Specifically, counter-claimants failed to make statements regarding § 78.055(4) and (5). In the absence of such statements, counter-claimants have failed to state a claim under § 78.055. See Al-Hakim v. Holder, 787 So. 2d 939, 941-42 (Fla. 2d DCA 2001) (finding that claim for replevin was deficient because petitioner's failure to allege the value of the property, that the property was not taken for a tax, assessment, or fine, and that the property was not taken under execution or attachment or that wit was exempt from execution or attachment). Accordingly, Count VI is due to be dismissed without prejudice.

     **5.  Tortious Interference with Business Relationship**

        Counter-defendants contend that the Counterclaim fails to state a claim for tortious interference with business relationship

because counter-claimants did not identify specific business relationships in the Counterclaim. Counter-defendants argue that "[a]bsent identification of specific customer relationships, Mr. Piret and Airflyte cannot state a claim for tortuous interference." (Doc. #16, pp. 11-12).

Under Florida law, the four essential elements of a claim for tortious interference with a business relationship are as follows:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship.

Popular Bank of Fla. v. R.C. Asesores Financieros, C.A., 797 So. 2d 614, 622 (Fla. 3d DCA 2001) (citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126 (Fla. 1985)). "[A] plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994). See also Ferguson Transp., Inc. v. North Am. Van Lines, Inc., 687 So. 2d 821, (Fla. 1996).

Here, counter-claimants have alleged counter-defendants intentionally interfered with the relationships between Airflyte and its existing customers, and that counter-defendants had knowledge of these relationships. (Doc. #3, ¶¶ 90-94). While specific customers have not been named, it is sufficient at this

stage that counter-claimants have alleged a specific group. Counter-defendants' argument that Airflyte attempts to bring a claim of tortious interference with its business relationship to the community at large is refuted by counter-claimants' limitation to its existing customers. (Id., ¶ 93). The Court concludes that, in identifying a specific group, counter-claimants have adequately plead Count VII.

### 6.  Breach of contract

Counter-defendants contend that Count VIII fails to state a cause of action for breach of contract regarding the purchase orders and the commission agreement because counter-claimants have neither provided sufficient allegations establishing the existence of any oral agreement nor attached, or incorporated, the documents supporting the existence of purchase orders in the Counterclaim. Counter-claimants respond that counter-defendants erroneously applied the Florida Rule of Civil Procedure pleading standard rather than the less stringent Federal Rule of Civil Procedure pleading requirement.  Counter-claimants further argue that the Counterclaim satisfies the applicable federal standard.

Fed. R. Civ. P. 8 governs general rules of federal pleading and states as follows:

> (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and

> plain statement of the claim showing that the pleader is
> entitled to relief, and (3) a demand for judgment for the
> relief the pleader seeks.  Relief in the alternative or
> of several different types may be demanded.

Fed. R. Civ. P. 8 does not require that counter-claimants attach copies of the purchase order or commission agreements.  Rule 10(c) allows, but does not require, the attachment of such documents. Thus, the Motion to Dismiss is due to be denied with respect to Count VIII.

### 7. Equitable Accounting

Counter-claimants seek an accounting "of all value derived by Mr. and Mrs. Friedland from the improper management of and distributions for Techtron." (Doc. #3, ¶ 102).  Counter-defendants argue that counter-claimants are not entitled to an accounting because counter-claimants have alleged neither a fiduciary relationship between counter-claimants and the Friedlands nor an inadequate remedy at law. (Doc. #16, p. 13).  Counter-claimants state that a fiduciary relationship exists.  Moreover, the "elaborate interactions between the Airflyte and Techtron corporate entities...constitute a complex transaction." (Doc. #25, p. 17 (internal quotation marks omitted)).

Under Florida law, to state a claim for an equitable accounting, the plaintiff must allege the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate.  Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990); see also Bankers Trust

Realty, Inc. v. Kluger, 672 So. 2d 897, 898 (Fla. 3d DCA
1996)("[T]he contract demands between litigants involve extensive
or complicated accounts and it is not clear that the remedy at law
is as full, adequate and expeditious as it is in equity.").

The Court finds that Count IX has been adequately plead.  The
Court agrees with counter-claimants that Friedland, as a manager of
Techtron funds, owes a fiduciary duty to Techtron's shareholders.
Piret has alleged that he is a majority shareholder of Techtron,
and that Friedland managed Techtron's funds.  The Counterclaim
adequately states a claim for equitable accounting, and the Motion
to Dismiss as to Count IX is due to be denied.

## IV.

Counter-defendants also move to strike portions of the
Counterclaim.  Counter-defendants assert that paragraphs 57-62 in
the Counterclaim include allegations related entirely to settlement
negotiations largely between counsel for the parties that arose
after the commencement of this case.  (Doc. #16, p. 14).  Counter-
claimants respond that the subject paragraphs describe discussions
that are not privileged settlement negotiations.  (Doc. #25, pp.
17-19).

Fed. R. Civ. P. 12(f) governs motions to strike and states as
follows:

> Upon motion made by a party before responding to a
> pleading or, if no responsive pleading is permitted by
> these rules, upon motion made by a party within 20 days
> after the service of the pleading upon the party or upon
> the court's own initiative at any time, the court may

order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Evid. 408 governs compromise and offers to compromise as competent evidence and states as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The Court finds that the contents of paragraphs 57-62 do not appear to reflect settlement negotiations. Thus, the Court will deny the Motion to Strike.

Accordingly, it is now

**ORDERED**:

1. Motion to Dismiss Counterclaim or Alternatively, to Strike Certain Portions Thereof (Doc. #15) is **GRANTED in part and DENIED in part** for the reasons stated above. Counts III-IX are dismissed without prejudice against Mrs. Friedland, and Count VI is dismissed without prejudice against Mr. Friedland and Techtron. The Motion is otherwise denied.

2.   Counter-claimants are granted leave to file an amended counterclaim within **eleven (11) days** of the date of this Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___3rd___ day of October, 2005.


_____
JOHN E. STEELE
United States District Judge